UNITED STATES of America,
Plaintiff–Appellee,

v.

BLUE RIBBON SMOKED FISH, INC.,
et al., Defendants–Appellants.

Docket No. 02–6020.

United States Court of Appeals,
Second Circuit.

Jan. 28, 2003.

Russell K. Statman, Plattsburgh, NY, for Appellants.

Charles S. Kleinberg, Office of the United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

Present: F.I. PARKER, STRAUB, and RAGGI, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the decision of said district court be and it hereby is AFFIRMED IN PART and VACATED AND REMANDED IN PART.

Defendants-appellants Blue Ribbon Smoked Fish, a corporation, and three Blue Ribbon co-owners and officers, appeal the district court's November 20, 2001 decision granting summary judgment to the government, as well as the district court's January 14, 2002 grant of a permanent injunction. Blue Ribbon and its officers argue that: (1) the grant of summary judgment was inappropriate; (2) the individual defendants were improperly enjoined; (3) the Food and Drug Administration ("FDA") may not implement a zero-tolerance policy whereby any amount of *Listeria monocytogenes* renders a food adulterated; and (4) the injunction was over broad and delegated too much authority to the FDA.

"We review a grant of summary judgment de novo. Summary judgment is appropriate where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 90 (2d Cir. 2002) (citations and quotation marks omitted). We find no genuine issue as to any material facts in this case, because the defendants do not dispute the hazardous condition of their fish processing plant, nor do they assert that it now meets the safety standards set out in the injunction. Thus,

the district court grant of summary judgment is appropriate, and we affirm for substantially the same reasons cited by the district court.

"We review the District Court's entry of a permanent injunction for abuse of discretion, which may be found where the Court, in issuing the injunction, relied on clearly erroneous findings of fact or an error of law." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 237 (2d Cir.2001). Further, "[i]njunctive relief should be narrowly tailored to fit specific legal violations." *Society For Good Will To Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1251 (2d Cir.1984). Accordingly, an injunction should not impose unnecessary burdens on lawful activity. *Id.*

It is true that the FDA has broad authority in matters involving adulterated products which can damage the health of the public. "The Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C.S. § 301 *et seq.*, has as its purpose the protection of the public from products not proven to be safe and effective for their alleged uses and the safeguarding of the public health by enforcement of certain standards of purity and effectiveness. The reach of the FDCA is broad and the provisions, touching the public interest in a direct way, are to be given a liberal construction." *United States v. Diapulse*, 457 F.2d 25, 28 (2d Cir.1972). Among the provisions in the FDCA are 21 U.S.C. §§ 331, 332 and 342, which broadly define adulteration of products, allow the FDA to determine what qualifies as an adulterated product, and authorize FDA enforcement actions, such as seeking an injunction against manufacturers of such products.

We find that many of appellants' contentions are without merit. Enjoining manufacturers from producing adulterated

products is squarely within the scope of the FDCA. *See* 21 U.S.C. §§ 331, 332. Providing specific terms that the corporation must meet to ensure its compliance and the safety of its products is certainly justified in light of Blue Ribbon's history. Additionally, the fact that the FDA may choose to set a zero-tolerance policy for potentially hazardous substances in foods is settled law. *See Young v. Cmty. Nutrition Inst.,* 476 U.S. 974, 106 S.Ct. 2360, 90 L.Ed.2d 959 (1986).

However, in light of the apparent closure of the Blue Ribbon plant,[1] some of the terms of the injunction may reach beyond the discretion of the district court. Restraint of corporation officers from any processing and marketing of smoked fish even *outside* the context of Blue Ribbon until the plant is rehabilitated is not necessary to redress or prevent illegal activity at Blue Ribbon.

Currently, the first paragraph of provision four of the injunction enjoins all defendants from "processing, preparing, packing, holding and distributing" smoked fish products at the now-closed Brooklyn plant or *any other* location until several conditions, including sufficient rehabilitation of the Brooklyn plant, are met. Thus, even if the corporation disbands and the plant is permanently closed, the officers will necessarily remain enjoined from participating in the smoked fish business unless or until they obtain a modification of the injunction. Because under the injunction's own terms, the officers already are subject to obeying FDA regulations in any future processing or distribution of smoked fish products, and because there appears to be no current plan to reopen the plant, we see no basis for conditioning

such an extensive ban on the individuals' future ability to participate in the smoked fish business on the satisfactory reopening of the Brooklyn plant.

Because of our concerns regarding the scope of provision four of the injunction, we strike the words "and any other locations at or from which defendants process, prepare, pack, hold, or distribute food, any smoked fishery product" from its initial paragraph. In so ordering, we do not intend to alter any other requirements in the injunction that may apply to defendants' renewed fish processing operations, whether at Foster Avenue or any other site owned or operated by defendants. We remand the case for further reconsideration in light of any changed facts which may be brought to the district court's attention, as well as for such modification of the injunction as the district court may deem appropriate to ensure defendants' clear understanding of their obligations with respect to renewed fish processing operations whether at Foster Avenue or other sites.

For the reasons we have stated, the judgment of the district court is AFFIRMED IN PART and VACATED AND REMANDED IN PART.

---

1. At oral argument, appellant's counsel emphasized that the Blue Ribbon plant is now closed and suggested that the closure may be permanent.